UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.

ANDALE PUBLISHING, LLC, and
STEPHANIE DUCASSE,

      Plaintiffs,

v.

INDEPENDENT MEDIA ASSOCIATES, INC.,
the successor in interest to
DATA SCIENCE CENTRAL, LLC,

      Defendant.
_____/

## COMPLAINT

Plaintiffs, Andale Publishing, LLC and Stephanie Ducasse, hereby file this Complaint against Defendant Independent Media Associates, Inc., the successor in interest to Data Science Central, LLC, and allege as follows:

### NATURE OF ACTION

1. This action relates to the Website Asset Purchase Agreement ("WAPA") entered into between Andale Publishing, LLC ("Andale") and Data Science Central, LLC ("DSC") in September 2018, and the rights related to such WAPA. A true and accurate copy of the WAPA is attached hereto as **Exhibit 1**.

2. Defendant Independent Media Associates, Inc. ("Defendant") is the successor in interest to DSC.

3. Plaintiffs bring this action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Copyright Act, 17 U.S.C. § 101, *et seq.*; and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213.

## PARTIES

4. Andale is a Florida limited liability company with its principal place of business located at 738 Acosta Street, Jacksonville, Florida 32204. Andale is a single-member LLC whose member is Stephanie Ducasse. Thus, Andale is a citizen of Florida for purposes of assessing diversity jurisdiction.

5. Stephanie Ducasse ("Ducasse") is the owner and sole member of Andale and resides in Jacksonville, Florida. Thus, Ducasse is a citizen of Florida for purposes of assessing diversity jurisdiction.

6. Defendant is a California corporation with its principal place of business located at 10536 Putney Road, Los Angeles, California 90064. Thus, Defendant is a citizen of California for purposes of assessing diversity jurisdiction. DSC was a Washington limited liability company with a principal address of 2428 35th Avenue, Issaquah, Washington 98029. Timothy Matteson ("Matteson") is a Director and the Chief Executive Officer of Defendant, and he was previously a "Governor" of DSC. Additionally, Vincent Granville was a "Governor" of DSC.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction under the Copyright Act of 1976, 17 U.S.C. § 101, *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02).

8. Additionally, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship, as alleged more fully in ¶ 10).

9. Moreover, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338 (exclusive original jurisdiction over claims arising under the Copyright Act) because the claims Defendant has threatened to assert against Plaintiffs include claims for copyright infringement and/or state law claims that are pre-empted by copyright law.

10. The amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, because Defendant itself has claimed that the amount in controversy exceeds $75,000 in its demand letter that asserted, "[i]n the event that [Defendant] is able to prove your infringement is willful—which it plainly is—[Defendant] is entitled to an increase in statutory damages of up to $150,000 *per video*." (Emphasis in original).

11. This Court has personal jurisdiction over Defendant (the successor in interest to DSC) because Defendant and DSC operate, conduct, engage in, or carry

on a business or business venture in Florida, and DSC entered into the WAPA with—and purchased the assets of—a Florida limited liability company.

12. Venue is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims asserted herein occurred in this Judicial District, including Plaintiffs' negotiation, entry into, and execution of the WAPA.

**Facts**

13. Prior to entering into the WAPA, Andale maintained an internet website called www.StatisticsHowTo.com to educate people on the topic of statistics and offer services related to statistics education ("Website").

14. The Website contained approximately 1,000 articles dedicated to educating people on the subject of statistics, most of which were authored by Ducasse.

15. Separately, Ducasse (individually) maintained a YouTube channel where she published original content through instructional videos dedicated to educating people on a wide variety of mathematical topics, including basic math, statistics, calculus, linear algebra, probability, and more (the "YouTube Channel").

16. The YouTube Channel was under the name "Stephanie Glen," as "Glen" is Ducasse's maiden name.

17. The Website included embedded links to the videos on the YouTube Channel, but these videos were never stored on the Website's server.

18. Ducasse would also grant licenses to educators to use the videos on the YouTube channel for teaching purposes.

19. At this time, Ducasse's income derived from Andale's revenue from the Website, from her original content on the YouTube Channel, and from her e-book, titled Practically Cheating Statistics.

20. As of the end of 2018, the YouTube Channel had over 22,000 subscribers and approximately 200 videos.

### The Website Asset Purchase Agreement

21. In mid-2018, Defendant approached Ducasse about selling Andale's Website.

22. Ducasse informed Defendant, and Defendant agreed, that any sale would not include the sale or transfer of the YouTube Channel or any content on the YouTube Channel (including videos) because Ducasse owned those personally and the videos were never stored on the Website.

23. On September 18, 2018, Defendant and Andale entered into the Website Asset Purchase Agreement ("WAPA") at issue in this case.[1]

---

[1] While DSC was the original Buyer in the WAPA, Defendant is the successor in interest to DSC. Thus, "Defendant" is used throughout this Complaint for ease of reference.

24. In the WAPA, Andale agreed to sell and transfer Andale's rights, title, and interest in the Website and internet domain name, www.StatisticsHowTo.com, and all of its respective contents to DSC. *See* Ex. 1, p. 1.

25. Additionally, Andale agreed to sell and transfer to Defendant "all of the related social media accounts including but not limited to, Instagram, Twitter, Facebook, and Pinterest and associated other rights more specifically and particularly identified on Exhibit "A" hereto." *See* Ex. 1, p. 1. Exhibit A of the WAPA only identified www.StatisticsHowTo.com and https://www.facebook.com/statisticshowto/. *See* Ex. 1, p. 6.

26. The WAPA also contained a non-compete provision that provided Andale would not compete with the Website "for a period of 5 years after execution of this Agreement," including that she would "not create or perform work for any site related to the topic of Statistics, or any site that would by reasonable standards be considered competitive with the Website." Ex. 1, p. 4.

27. Ducasse and Defendant agreed that the YouTube Channel did not fall under prohibited activity in the non-compete provision.

28. At this time, Defendant had full knowledge that Ducasse received income from the original content she created for the YouTube Channel, that Ducasse would continue creating content and receiving income for the YouTube Channel,

6

and that Andale was not transferring rights or ownership of the YouTube Channel to Defendant.

29. Indeed, less than one month after the WAPA was entered, Ducasse and Defendant's principals—Matteson and Vincent Granville—emailed back and forth, in writing, discussing the YouTube Channel, which was called "Stephanie Glen," and how it was Ducasse's "personal channel."[2]

### The Website's Use of Ducasse's Videos

30. After the parties entered the WAPA, while Ducasse maintained ownership and rights in the YouTube Channel, Ducasse allowed Defendant to continue to embed links to videos from the YouTube Channel on the Website.

31. In order to present content on the Website that would be relevant to search engines while at the same time maintaining the visitor's experience, Defendant used common and generally accepted internet publishing and search engine optimization ("SEO") practices.

32. One of these practices involves automatically displaying videos with links to related internet content on other websites that a visitor to the Website might find interesting and relevant. This practice is called web syndication.[3]

---

[2] Around 2021, Ducasse changed the name of the YouTube Channel to "Prof.Essa," again without objection from Defendant.

[3] Wikipedia defines "web syndication" as "making content available from one website to other sites. Most commonly, websites are made available to provide either summaries or full renditions of a website's recently added content. The term

7

33. There are dozens of different web syndication technologies, including RSS.[4]

34. With an RSS feed, a user's feed readers will display headlines, summaries, and sometimes a modified version of the original full content, which can and often does include videos.

35. During the timeframe at issue, Defendant was a member of a content syndication network operated by Newor Media. Newor Media would analyze the Website's content and then display videos with links to related internet content on other websites in the Newor Media network, such as the YouTube Channel, alongside the Website's content.

36. During the timeframe at issue, the Website never stored the videos displayed by Newor Media on the www.StatisticsHowTo.com web server.

37. Instead, each video was embedded on the Website from the YouTube Channel or was hyperlinked on the Website to the YouTube Channel.

38. Review of the publicly available HTML code of the Website around the time these videos were displayed reveals links to the YouTube Channel where the

---

may also describe other kinds of content licensing for reuse." *See Web syndication*, Wikipedia.com, https://en.wikipedia.org/wiki/Web_syndication (last visited February 20, 2024).

[4] "RSS" is defined as "a web feed that allows users and applications to access updates to websites in a standardized, computer-readable format. *See RSS*, Wikipedia.com, https://en.wikipedia.org/wiki/RSS (last visited February 20, 2024).

videos were actually stored. See a true and correct copy of the HTML code from the Website attached as **Exhibit 2**.

39. Thus, when a user clicked the video, the user's browser was directed to the YouTube Channel.

40. Defendant operated this way, using embedded links to videos on Ducasse's YouTube Channel, for more than five years after the WAPA was entered.

### Defendant's Demand Letters

41. On or about January 3, 2024, Defendant sent Andale a demand letter accusing Andale of violating Defendant's "intellectual property rights," infringing Defendant's "copyright interest[s]," and an "ongoing violation" of the WAPA, including the non-compete provision ("Demand Letter"). A true and correct copy of the Demand Letter is attached hereto as **Exhibit 3**.

42. Specifically, the Demand Letter claimed that the WAPA included the transfer of "all rights to videos accessible by links on the Website and, specifically, the statistics-related videos residing on your YouTube channel, as well as the YouTube channel itself." *Id*.

43. The Demand Letter also claimed that any original content on the YouTube Channel created by Ducasse after the WAPA was entered into was the property of Defendant. *Id.*

9

44. The Demand Letter insisted that Ducasse "immediately transfer ownership and control of the YouTube channel and all statistics-related content to IMA, and that [she] cease and desist from offering access to such videos on any other YouTube channel or social media platform." *Id.*

45. Finally, the Demand Letter threatened that Defendant is "entitled to all proceeds generated by both the videos that it acquired in the WAPA, as well as all videos you subsequently created that fall within the scope of the WAPA, through the termination of the agreement in September of 2023." *Id.* In the alternative, IMA Defendant threatened it would be "entitled to statutory damages of not less than $750, nor more than $30,000 *per video*. In the event that [Defendant] is able to prove your infringement is willful – which it plainly is – [Defendant] is entitled to an increase in statutory damages of up to $150,000 *per video*." *Id.* (emphasis in original).

46. Thinking such Demand Letter was surely a mistake, Andale responded to the Demand Letter on or about January 5, 2024 ("Response"). A true and correct copy of the Response is attached hereto as **Exhibit 4**.

47. In the Response, Ducasse explained that her personal YouTube Channel was not part of the sale of the Website, and the videos were never hosted on the Website. *Id.*

10

48. Moreover, Ducasse explained that any videos she created and published during or after the WAPA was entered were made with the express permission and knowledge of Matteson.

49. On or about January 25, 2024, Andale received a reply from Defendant maintaining Defendant's accusations that Andale was infringing Defendant's copyright interests, that such videos belonged to Defendant, and that Andale and/or Ducasse were in violation of the WAPA ("Reply"). A true and correct copy of the Reply is attached hereto as **Exhibit 5**.

50. Around the same time as the Demand Letter and Reply, Ducasse received notifications from YouTube that it detected infringing videos on the YouTube Channel.

51. Ducasse learned that these notifications were sent by Defendant to YouTube, where Defendant was claiming copyright interests in Ducasse's own original content.

52. As a result of Defendant's false complaints to YouTube, the YouTube Channel was shut down.

53. As a result, Ducasse has not been able to earn any proceeds from her original videos—which is her main source of income—since Defendant sent the Demand Letter on or about January 3, 2024.

54. Moreover, Ducasse has recently applied for copyrights of more than 80 videos from the YouTube Channel.

55. As of the date of this Complaint, she has received copyright registration numbers for 75 of the videos she created. A spreadsheet listing the copyright registration number and the name of each video is attached as **Exhibit 6**.

**Count I – Declaratory Judgment of Non-Infringement of Copyright Interests**

56. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

57. There is an actual controversy between the parties in that Plaintiffs contend that, by reason of the facts alleged above, the WAPA attached as Exhibit 1 to this Complaint did not convey any rights in Ducasse's intellectual property or YouTube Channel to DSC or Defendant. Plaintiffs further contend that Defendant did not contribute any original authorship to the videos or the YouTube Channel.

58. In view of the foregoing, Plaintiffs deny that Defendant has any legal rights, in copyright or contract, exclusive or otherwise, in the videos or YouTube Channel; instead, Ducasse possesses all legal rights in the videos and YouTube Channel.

59. Therefore, Plaintiffs deny that they have infringed on any copyright interests of Defendant.

60. Defendant, however, contends that the WAPA conveyed all intellectual property rights in the YouTube Channel and the videos therein to DSC and/or

Defendant. Thus, Defendant contends that Andale and/or Ducasse are infringing on its copyright interests.

61. There is a present controversy whether Plaintiffs have infringed upon Defendant's copyright interest in the videos on the YouTube Channel.

62. Accordingly, Plaintiffs seek a declaratory judgment that Defendant has no rights in the videos or YouTube Channel and that Plaintiffs are not infringing on any copyright interests of Defendant.

### **Count II - Declaratory Judgment of Non-Breach of Contract**

63. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

64. There is an actual controversy between the parties in that Plaintiffs contend that, by reason of the facts alleged above, Plaintiffs' actions did not constitute a breach of the WAPA, including the non-compete provision therein, attached as Exhibit 1 to this Complaint.

65. Defendant, however, contends that Andale and/or Ducasse have breached the terms of the WAPA, including the non-compete provision of the WAPA.

66. There is a present controversy whether Plaintiffs have breached the WAPA, including the non-compete provision therein.

67. Accordingly, Plaintiffs seek a declaratory judgment that Plaintiffs are not in breach of the WAPA.

## **Requested Relief**

**WHEREFORE**, Plaintiffs respectfully request the Court enter judgment in their favor and grant Plaintiffs the following relief:

A. Pursuant to 28 U.S.C. § 2201, declarations that:

1) Defendant IMA does not and cannot have any copyright interest or other exclusive right in or to the videos or YouTube Channel;

2) Plaintiffs are not infringing on any copyright interests of Defendant;

3) Plaintiffs are not in breach of the WAPA, including the non-competition provision.

B. Pursuant to 28 U.S.C. § 2202, such other and further relief, at law and in equity, to which Plaintiffs may be entitled.

Dated: March 14, 2024					Respectfully submitted,

							RABIN KAMMERER JOHNSON
							1601 Forum Place, Suite 201
							West Palm Beach, FL 33401
							Tel: 561-659-7878

							s/ Lauren E. Johnson
							Lauren E. Johnson
							ljohnson@rkjlawgroup.com
							Fla. Bar No. 112027
							*Lead Counsel for Stephanie Ducasse*

14